UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TYRONE MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:15-cv-01210-RLY-DML |
| | ) | |
| YRC, INC. d/b/a YRC YELLOW | ) | |
| FREIGHT, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Tyrone Miller, is an African-American truck driver employed by

Defendant, YRC, Inc., doing business as YRC Yellow Freight ("YRC"). In his

Complaint, Plaintiff alleges that YRC subjected him to a hostile work environment

(Count I) and race discrimination (Count II) in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e, *et seq*. Plaintiff further alleges that YRC retaliated

against him for engaging in statutorily protected activity (Count III). YRC now moves

for summary judgment. For the reasons stated herein, YRC's motion is **GRANTED**.

## I.    Evidentiary Issues

Pursuant to Southern District of Indiana Local Rule 56(e), "[a] party must support

each fact the party asserts in a brief with a citation to a discovery response, a deposition,

an affidavit, or other admissible evidence. The evidence must be in the record or in an

appendix to the brief." As argued by YRC, Plaintiff's Response repeatedly cites to

information that is not designated in the record. For example, Plaintiff filed his own

declaration that contains citations to pages of his deposition that are not in the record. (*See* Filing No. 61-1, Declaration of Tyrone Miller ("Plaintiff Decl.") ¶¶ 26, 39, 40, 41, 42, 44, 45, 46, 48, 49). His declaration also contains inadmissible hearsay. (*Id.* ¶¶ 33, 49). In addition, Plaintiff submitted the declaration of Rick A. Williamson (*see* Filing No. 61-2), but failed to disclose him as a witness. Pursuant to Federal Rule of Civil Procedure 37(c)(1), the failure to properly disclose a witness as required by Rule 26(a) or (e) requires exclusion of that witness absent a showing that such omission was substantially justified or harmless. Under the circumstances presented here, Plaintiff's omission does not satisfy those criteria. Accordingly, any evidence that is inadmissible, not properly disclosed, or unsupported by designated evidence will not be considered.

## II.     Factual Background

### A.     YRC

YRC provides both transportation and logistics services that include international and domestic freight carriage, freight forwarding, warehousing, truckload brokerage, contract carriage, and transportation management services. (Filing No. 53-1, Declaration of Margie Leahy ("Leahy Decl.") ¶ 3). YRC has both equal opportunity and anti-retaliation policies, which it regularly distributes to its employees. (*Id*. ¶ 4). The policy states how and to whom employees should report concerns. (*Id*.).

In September 1997, Plaintiff began working for YRC as a Line Haul Driver at YRC's Indianapolis terminal. (*Id*. ¶ 5; Filing No. 53-2, Tyrone Miller Deposition

("Plaintiff Dep.") at 19).[1]  His supervisor is Phil Kristof, Line Haul Manager for the Indianapolis terminal.  (Leahy Decl. ¶ 5.).  Like all drivers at the Indianapolis terminal, Plaintiff is a union member whose employment is governed by a collective bargaining agreement between YRC and Plaintiff's union, the International Brotherhood of Teamsters Local No. 135.  (*Id*.).

The Indianapolis terminal employs approximately 232 road drivers and uses approximately 84 to 155 trucks, depending on how many are at the terminal or being serviced for repairs.  (*Id*. ¶ 6).  Drivers typically operate a different truck each day due to the busy shipping schedule and varying needs of the terminal.  (*Id*.; Plaintiff Dep. at 32).  Trucks are assigned to truckers randomly by employees who do not know the identity of the driver when the truck is assigned.  (Leahy Decl. ¶ 6).

Line Haul Drivers deliver products from the Indianapolis terminal to other cities.  (*Id*. ¶ 7).  Before a driver arrives at the terminal, his or her selected truck is pre-loaded and subjected to a safety inspection.  (*Id*.).  If a driver has concerns with the truck prior to departure, the driver may take the truck to the YRC repair shop for additional inspection.  (*Id*.).  Drivers are paid their hourly rate during the inspection and/or repair downtime.  (*Id*.).

Since 2009, when employees believe they have not been paid properly, the practice has been to contact either Kristof or Rhonda Huber, the Relay Supervisor handling administrative tasks.  (*Id*. ¶ 8).  If more information is needed, employees fill

---

[1] YRC has submitted two separate exhibits for Plaintiff's deposition, Filing Nos. 53-2 and 53-3. The court will interchangeably refer to each of these as "Plaintiff Dep."

out a pay request form.  (*Id*.).  Huber or Kristoff then reviews the forms and approves or denies them.  (*Id*.).  An employee may file a grievance with the union for a denied pay request.  (*Id*.).

## B.    Plaintiff's Claims Against YRC

Plaintiff claims he suffered a "pattern" of racial discrimination, racial harassment, and retaliation by Kristoff that began in 2010.  (Plaintiff Dep. at 86-87).  The allegations supporting these claims are based on "the same stuff" (*id.* at 81)—unsafe trucks, pay complaints, and his interactions with Kristof.

### 1.    Unsafe Trucks

According to Margie Leahy, YRC's Human Resources Director—Midwest Division, due to the number of times Plaintiff submitted his truck for inspection and repairs, YRC directed mechanics to notify supervisors of Plaintiff's repair requests to ensure the legitimacy of the requests.  (Leahy Decl. ¶ 7).  Plaintiff testified that YRC mechanics do not always fix the problems he reports before his assigned trip; instead "they usually sign off and take the responsibility and put it on themselves instead of me." (Plaintiff Dep. at 39).  Plaintiff could not say how many times in the past his truck was not fixed.  (*Id.* at 91).

Plaintiff testified that he has been forced to drive trucks with air leaks, steering problems, and worn tires.  (*Id.* at 32, 50).  He recalled an incident involving "bad tires" in Decatur, Illinois, but he did not know whether Kristof gave the order for him to drive the truck with those tires.  (*Id.* at 121-123).  He could not recall any specific incidents when the vehicle he was driving malfunctioned and admitted he has not been in a vehicular

accident due to lack of repairs. (*Id.* at 123-24). In his 19 or so years at YRC, he has refused to drive a truck because he considered it unsafe "[p]robably twice." (*Id.* at 39).

## 2. Pay Complaints

Plaintiff testified that the pay discrepancies he raises are fixed a majority of the time; in fact, he recalls not getting paid "[m]aybe once." (*Id*. at 45-46). He testified that at one point YRC failed to pay him $300.00 in connection with a trip to Decatur, Illinois, sometime prior to March 2014. (*Id.* at 47-48). Yet, he never raised the issue with YRC. (*Id*. at 47-78). Another instance was a trip to and from Chicago, but he could not recall when that trip occurred. (*Id*. at 88). Plaintiff testified that the Chicago and Decatur trips were the only ones he was not paid for. (*Id.* at 78-79). He listed other trips he claims he should have been paid for, but he admits that he does not have the documentation to back up his allegations. (*See generally id.* at 99-114; *id.*, Dep. Ex. 2 at 2-4).

## 3. Interactions with Kristof

Plaintiff alleges that his supervisor, Kristof, was hostile to him, had a "mean demeanor," threatened to "set [him] up," and yelled at him. (*Id.* at 51-52, 54). During one incident, Plaintiff complained about being sent to Chicago, to which Kristof retorted, "Get out of my office with that shit. File a grievance on it." (*Id*. at 51-52). On March 19, 2014, Plaintiff went to Kristof's office to complain that his paycheck was short for "shop time"; Kristof responded, "Boy, file a grievance." (*Id.* at 53). Kristof's comment prompted Plaintiff to say, "I'm going to call the EEOC [Equal Employment Opportunity Commission] and the Labor Board." (*Id*. at 53). According to Plaintiff, Kristof "charged" at him and told him that he would not be driving his route that day. (Plaintiff

Decl. ¶ 47; Plaintiff Dep. at 54).  About an hour later, however, Plaintiff was allowed to drive his route.  (Plaintiff Decl. ¶ 47).

Besides calling Plaintiff "boy" on one occasion, Kristof did not use any other language that Plaintiff considered racial in nature.  (*Id*. at 53, 59).  No one else at YRC used racial slurs or insults toward him.  (*Id*.).

Plaintiff admitted that no other non-African-American employees were treated differently with respect to pay, truck issues, and the like.  (*Id*. at 77-78, 84, 210).  He further conceded that Kristof yells and curses at other employees, including Caucasians.  (*Id*. at 52-53, 70).

Plaintiff filed an EEOC charge of discrimination on June 26, 2014, alleging race discrimination and retaliation.  (Filing No. 53-6, Charge of Discrimination).  This lawsuit followed.

## III. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

## IV.  Discussion

Plaintiff alleges he was discriminated against and subjected to a hostile working environment because of his race. Plaintiff also alleges YRC retaliated against him for contacting the EEOC.

### A.  Race Discrimination (Count II)

In *Ortiz v. Werner Enterprises*, the Seventh Circuit overruled a long line of cases distinguishing between the direct and indirect methods of proof. 834 F.3d 760, 765 (7th Cir. 2016). Now, the test "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* The court reasoned: "Evidence is evidence. Relevant evidence must be considered and irrelevant

evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" *Id.* The court clarified that its decision "d[id] not concern *McDonnell Douglas*," and thus, the familiar burden-shifting method remains as a means of organizing, presenting, and assessing circumstantial evidence of discrimination. *Id.* at 766; *see also David v. Bd. of Trs. Of Cmty. Coll. Dist. No. 508,* 846 F.3d 216, 224 (7th Cir. 2017) (interpreting *Ortiz*).

Under the *McDonnell Douglas* method, a prima facie case of employment discrimination requires a plaintiff to establish that: (1) he is a member of the protected class; (2) his job performance met his employer's legitimate expectations; (3) he was subjected to an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably by the employer. *David*, 846 F.3d at 225. YRC argues Plaintiff cannot establish the third and fourth elements.

### 1. Adverse Employment Action

"A cognizable adverse employment action is a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Chaudhry v. Nucor Steel–Indiana,* 546 F.3d 832, 838 (7th Cir. 2008) (quoting *Bell v. E.P.A.,* 232 F.3d 546, 555 (7th Cir. 2000)). "[An] adverse job action must be materially adverse, meaning more than a mere inconvenience or an alteration of job responsibilities." *Ribando v. United Airlines, Inc.,* 200 F.3d 507, 511 (7th Cir. 1999). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an adverse action." *O'Neal v. City of Chicago,* 392 F.3d 909, 911 (7th Cir.

2004). Adverse employment actions typically fall into one of three categories: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011).

In support of his claim, Plaintiff asserts the following as adverse employment actions: (1) he was forced to drive unsafe trucks; (2) he was not paid money he was owed and was forced to wait beyond his regular pay day to receive the money that he was due; and (3) his interactions with Kristof.

### a. Truck Conditions

Plaintiff first argues he suffered an adverse employment action because he was forced to drive unsafe trucks. Plaintiff's allegations regarding the safety (or lack thereof) of the trucks he drove lack the requisite specificity to survive a summary judgment motion. It is well-settled that "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the matter asserted." *Drake v. Minn. Min. Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (citation omitted). Plaintiff does not specify how many times he was forced to drive unsafe trucks, the dates that these instances allegedly occurred, or provide any evidence – aside from his own subjective beliefs – that the vehicles were actually not safe.

Relatedly, Plaintiff also argues that driving a truck he knows to be unsafe causes him "substantial stress." (Filing No. 60, Response at 12). Adverse employment actions affect the terms and conditions of employment. They do not embrace the subjective impact of a particular action on an employee's psyche. *See Gul–E–Rana Mirza v. The Neiman Marcus Grp., Inc.,* 649 F. Supp. 2d 837, 858 (N.D. Ill. 2009) ("[T]he existence of a materially adverse employment action is based on the objective conduct of the employer rather than the subjective, psychic response of the employee."); *Mangano v. Sheahan,* Case No. 00 C 3953, 2002 WL 1821738 at *7 (N.D. Ill. Aug. 7, 2002) ("[W]e agree with Defendants that Plaintiff's depression and resultant medical leave did not constitute an adverse employment action. Adverse employment actions . . . do not extend to the subjective impact of a particular action on an employee's psyche."). Accordingly, Plaintiff fails to establish he was subjected to an adverse employment action due to driving unsafe trucks and the resultant stress that ensued.

### b.    Pay Issues

Next, Plaintiff argues he suffered an adverse employment action because "he was not paid all the money he was owed, and . . . he was often forced to wait beyond his regular pay day to receive the money he was due." (Response at 13). Like his unsafe truck/stress complaint above, Plaintiff fails to delineate any amounts owed or identify dates when payment was withheld or delayed. Even if he did submit such evidence, however, minor pay disputes do not constitute an adverse employment action. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301-02 (7th Cir. 2004) (finding refusal to pay plaintiff for a brief absence when he left after a verbal confrontation with his supervisors

did not constitute an adverse employment action because the "non-payment during his disputed absence did not work a quantitative or qualitative change in the conditions of his employment"); *Rhodes v. Ill. Dep't of Transp.,* 359 F.3d 498, 505 (7th Cir. 2004) (holding plaintiff's "allegation that she was marked absent without pay does not qualify as a disciplinary suspension because this single absence had only a negligible impact on her income, and did not cause her material harm").

### c.    Kristof's Comments

Finally, Plaintiff claims his interactions with Kristof constitute adverse employment actions.   These interactions include Kristof calling him a "boy," threatening to "set him up," and yelling at him to "[g]et out of [his] office with that shit."

"Conditions of employment designed to harass and humiliate an employee because []he is a member of one of Title VII's protected classes may constitute an adverse employment action."  *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002). To qualify as an adverse employment action, however, the harassing conduct must be actionable—i.e., severe or pervasive.

Kristof's alleged conduct, including calling Plaintiff a "boy" and "charging" him on one occasion, is simply not enough to qualify as an adverse employment action. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 601 (7th Cir. 2014) (finding that "one-time use of a racial epithet is not severe enough to trigger liability, [plaintiff] can only succeed if the totality of the collection of allegedly harassing incidents triggers liability");  *see also Smith v. N.E. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (finding that "the mere utterance of an … epithet which engenders offensive feelings in an

employee" does not alone violate Title VII"); *Bridgeforth v. Cook Cty.*, No. 14 C 4443, 2015 WL 5951545, at *6 (N.D. Ill. Oct. 13, 2015) (finding supervisor's act of pushing plaintiff in the back not sufficiently severe to establish a hostile work environment); *Carter v. Citizens Gas & Coke Util.*, No. 1:04-cv-0854-JDT-TAB, 2006 U.S. Dist. LEXIS 15722 (S.D. Ind. April 3, 2006) (recommending summary judgment on discrimination and retaliation claims when plaintiff was called "boy" several times because the comments had no role in any employment actions), *adopted by* 2006 U.S. Dist. LEXIS 20921 (S.D. Ind. April 18, 2006). In addition, Kristof's alleged misconduct is not tied to any adverse action. *Sun v. Bd. of Trustees of Univ. of Ill.*, 473 F.3d 799, 813 (7th Cir. 2007) ("Stray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment."). For these reasons, Plaintiff fails to establish he was subjected to an adverse employment action due to his interactions with Kristof.

The court's inquiry could end here. *Williams v. Airborne Express, Inc.*, 521 F.3d 765, 768 (7th Cir. 2008) ("The failure to establish any single element of the prima facie case dooms a discrimination claim."). For the sake of completeness, however, the court will address the similarly situated element of the prima facie case.

### 2. Similarly Situated Individuals

The similarly situated analysis requires a context-based examination of all relevant factors. *South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 752 (7th Cir. 2007). The inquiry generally requires the plaintiff to show that the comparator had the same supervisor, was

subject to the same employment standards, and had engaged in conduct similar to that of the plaintiff. *Id.*

Plaintiff testified that he observed other Caucasian drivers take their cars in for repairs "without having a supervisor come to the shop to check the vehicle out." (Response at 16, citing Plaintiff Dep. at 63 and Plaintiff Decl. ¶ 32). He fails to support his testimony, however, with any specific facts, including the identity of the alleged comparators. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 940 (7th Cir. 2003) (finding plaintiff failed to establish the similarly situated element because she "present[ed] no evidence, affidavits, or deposition testimony" from the alleged comparators "to back up her account of the[] incidents").

Plaintiff also relies on the testimony of Rick Williamson, who testified that he never heard Kristof make a complaint about another driver for taking a truck to the shop. (Williamson Decl. ¶¶ 8-9). As discussed in Section I of this Entry, his testimony is stricken from the record. But even if the court were to consider Williamson's statement, it lacks the specificity required to raise a genuine issue of material fact, and it is not indicative of discrimination. Plaintiff, therefore, fails to establish that he was treated less favorably than similarly situated individuals not in the protected class.

Because Plaintiff fails to establish his prima facie case, his race discrimination claim must fail as a matter of law. *Williams*, 521 F.3d at 768. Accordingly, YRC's motion for summary judgment on Count II of Plaintiff's Complaint for race discrimination is **GRANTED**.

### B. Retaliation (Count III)

Title VII prohibits "retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice or participating in the investigation of one." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). To succeed, a plaintiff must establish that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Volling v. Kurtz Paramedic Servs.*, 840 F.3d 378, 383 (7th Cir. 2016). "In the retaliation context, the challenged adverse action need not be one that affects the terms and conditions of employment, but it 'must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity.'" *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (quoting *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007)).

In support of this claim, Plaintiff relies on the same allegations as those in support of his race discrimination claim: "being forced to drive unsafe vehicles; [] being paid late, or not at all for some non-driving work he performed; and [] Kristof's harassment." (Response at 17). For the reasons set forth in Section III.A.1, he lacks evidentiary support for his first two allegations. Kristof's alleged harassment merits a brief discussion.

According to Plaintiff, after he informed Kristof he intended to call the EEOC, Kristof called him a "boy," charged at him, and told him he would not be driving his route that day. Curiously, Plaintiff *did* drive his route that day, albeit an hour later. In any event, Plaintiff was not dissuaded from engaging in protected activity as a result of

Kristof's alleged harassment because he did, in fact, call the EEOC after the incident. (Plaintiff Decl. ¶ 46). Furthermore, Plaintiff's theory of the case is built on the mistreatment of Kristof both before and after the March 2014 incident. As noted by the Seventh Circuit, "[i]f there was 'no ratcheting up of the harassment' after the complaint was filed, the complaint could not have been the cause of the allegedly retaliatory conduct.'" *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 735 (7th Cir. 2001) (quoting *McDonnell v. Cisneros*, 84 F.3d 256, 259 (7th Cir. 1996)). And finally, Plaintiff testified that since the incident, he has not "interacted with [Kristof] at all." (Plaintiff Dep. at 67). Accordingly, Plaintiff fails to establish he suffered an adverse employment action, and thus, his claim for retaliation fails as a matter of law. YRC's motion for summary judgment on Count III of Plaintiff's Complaint for retaliation is therefore **GRANTED**.

### C. Hostile Work Environment Claim (Count I)

Title VII "prohibits an employer from engaging in racial harassment that creates a hostile working environment." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004). To prove a claim for a hostile work environment, a plaintiff must show that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment, creating a hostile or abusive atmosphere; and (4) there is a basis for his employer's liability. *Id.*

Like his race and retaliation claims, Plaintiff alleges: (1) he was forced to drive trucks that he considered unsafe; (2) he suffered pay discrepancies "a lot of times" since Kristof took over as his manager; and (3) he has had to see a psychiatrist for stress

because Kristof called him "boy," harassed him about taking his truck to the shop before a job-related trip, and failed to pay him what he was owed. (Response at 19-20). In sum, Plaintiff felt as though Kristof was "coming down on [him] real hard, and [he] didn't know why." (Plaintiff Dep. at 17; Plaintiff Decl. ¶ 41). For the reasons set forth in Section III.A.1, Plaintiff's unsafe truck/truck repair/pay discrepancy claims lack evidentiary support; his allegations of work-related stress are not employment actions; and his allegations relating to Kristof's use of the term "boy" do not establish that Plaintiff was subjected to a hostile work environment. *See Nichols*, 755 F.3d at 601 (finding "one utterance of the n-word has not generally been held to be severe enough to rise to the level of establishing liability"). Therefore, Plaintiff's hostile work environment claim, like his discrimination and retaliation claims, fails as a matter of law. Accordingly, YRC's motion for summary judgment on Count I of Plaintiff's Complaint is **GRANTED**.

## V.      Conclusion

The court finds no genuine issue of material fact exists on Plaintiff's Title VII claims against YRC. Accordingly, Defendant YRC's Motion for Summary Judgment (Filing No. 51) is **GRANTED**. The court will enter judgment accordingly.

**SO ORDERED** this 21st day of April 2017.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.

16